## J. W. Shields *v.* The State.

1. The "Rule." — The enforcement of the rule to sequester witnesses being a matter confided to the discretion of the trial court, its action thereon will be revised on appeal only when an abuse of that discretion is shown.

2. Witness — Practice. — The right to discredit a witness by proving his statements contradictory of his testimony extends no further than the predicate laid for that purpose.

3. Jury Law. — That a petit juror had heard the testimony at a former trial is not cause for challenge, — it not appearing that, when empanelled, he had any opinion in the case.

Appeal from the District Court of Ellis. Tried below before the Hon. G. N. Aldredge.

The indictment charged the appellant with assault with intent to murder J. B. Allen, on October 29, 1877. The verdict was, guilty of aggravated assault, and a fine of $1,000 the punishment assessed.

The appellant and Allen, it appears, were connected by marriage, their wives being sisters, but they were on bad terms with each other. Early in the morning of the day alleged in the indictment, Allen found the appellant's horses in his (Allen's) wheat-field. He took them out and tied them to the fence near his house, and when a son of the appellant came for them, would not let him take them, but

told him to tell his father, the appellant, to come for them himself. Immediately on getting the message, the appellant, taking his gun at his wife's suggestion, went after his horses, and seeing Allen standing near his door, said, "Allen, what have you got my horses tied up for?" and Allen replied, "To keep them out of my field." Appellant said, "Your fence is down, and the horses can walk over anywhere," to which Allen answered "All right." Then the appellant, saying, "Well, G—d d—n you, I will kill you," raised his gun and shot at Allen, who stepped into his house and got his gun from behind the door, and fired at the appellant, planting a charge of mustard-seed in his arm. Allen's gun had been loaded for a month or more, and was kept behind the door. This was, in substance, the account of the matter given by Allen's wife and two children.

For the defence were introduced the wife and two sons of the appellant, who watched him from their home, some four or five hundred yards from Allen's. According to their testimony, the first shot was not fired by the appellant, but by Allen.

The State, however, having laid the proper predicate, introduced a justice of the peace, who testified that Mims Shields, the eldest son and best witness of the appellant, came and reported the shooting, and wanted the witness to go and see about it, the same morning and immediately after it occurred. Witness inquired of him the particulars, and he told witness that his father, the appellant, fired the first shot.

*Anderson & Wharton,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

WINKLER, J. As to the matters set out in the first bill of exceptions, it is sufficient to say that, agreeably to the statement of facts, the person named J. B. Allen did not

testify in the case ; and as to the other, the female witness,
it was within the discretion of the presiding judge whether
she should be permitted to remain in the court-room or
not, the witnesses being under the rule.   It is not made to
appear here that there was any such abuse of that discre-
tion as requires investigation.

In bill of exceptions No. 2, mentioned in the first error
assigned, it is shown that counsel for the defendant at-
tempted to discredit one of the State's witnesses by prov-
ing she had made statements out of court contrary to what
she had testified to at the trial.   The matter of controversy
was not one of a material character, when considered with
reference to the whole testimony.   The fact sought to be
elicited from the impeaching witness was that the State's
witness had said, in some conversation, that the assaulted
party had prepared his shot-gun for the defendant, and had
placed it upon the bed in the morning ; which the witness
denied having said, but said the gun was behind the door,
where it had been standing for some time previously.   The
impeaching witness was permitted to answer to the extent
of the predicate laid, and the court was not required to
allow any greater latitude in the examination ; and, besides,
the further examination proposed was with reference to a
matter of too little importance to have further occupied the
time of the court, and this was not unlikely the reason oper-
ating on the mind of the court in passing on the question
in the motion for a new trial.   As to the matter set up in
the bill No. 3, taken to testimony of Mrs. Shields, it seems
the counsel was permitted to cross-examine her to the ex-
tent allowed by law.

As to the juror Snider, mentioned in bill of exceptions
No. 4, it is not shown by the record that he was an incom-
petent or partial juror.   The fact that the juror had heard
a portion of the testimony at the examining trial did not
necessarily impress, nor was it of itself calculated to so im-
press, his mind to such an extent as to render him partial.

It is not made to appear that at the time he was taken on the jury he had any opinion whatever as to the guilt or innocence of the accused, nor do the affidavits of his fellow-jurors create such an impression.

There was no error in refusing a new trial. The charge was substantially correct in law, and as favorable to the defendant as the testimony warranted. The questions involved were fairly submitted to the jury, and the court below having declined to disturb their verdict, we have no authority to set aside its action. The judgment is affirmed.

*Affirmed.*